CIVIL ACTION NO. 10-266-GWU

HOLLY BARRETT,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

Holly Barrett brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the court on cross-motions for

summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

3.     The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Barrett, a 39-year-old former addiction counselor with at least a high school education, suffered from impairments related to polysubstance abuse. (Tr. 18, 23). The ALJ determined that as a result of her impairments, no jobs would remain available. (Tr. 23). However, Public Law 104-121 bars a finding of disabled status if drug or alcohol abuse is a "material" factor contributing to the determination of disabled status. 42 U.S.C. § 423(d)(2)(C). The ALJ was then required to determined whether Barrett would be

disabled in the absence of substance abuse.  20 C.F.R. § 404.1535.  The ALJ found that if the claimant maintained sobriety, she would suffer no more than a minimal restriction of her ability to perform work activities.  (Tr. 24).  Since a significant number of jobs would remain available to the plaintiff if substance abuse was discontinued, she could not be considered totally disabled.  (Tr. 26-27).  The ALJ based this decision, in part, upon the testimony of a vocational expert.  (Tr. 26).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Martha Goss included such factors as one of Barrett's age, and educational background, restricted by such non-exertional physical limitations as a need to avoid exposure to temperature extremes, wetness, humidity, concentrated dust, fumes or chemicals, hazardous machinery, and dangerous heights.  (Tr. 610).  The question included such mental restrictions as "moderate" limitation of ability in such areas as (1) understanding, remembering and carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) working in coordination with or in proximity to others without being distracted by them; (4) interacting appropriately with the general public; and (5) responding appropriately to changes in a work setting.  (Id.).  In response, the witness identified a significant

number of jobs in the national economy which could still be performed.  (Tr. 611).
The ALJ relied upon this testimony to determine that the plaintiff would not be
disabled if she remained sober.  (Tr. 26-27).

    With regard to Barrett's mental condition, treatment records from the
Cumberland River Comprehensive Care Center in January of 2005 noted a history
of two psychiatric hospitalizations related to drug use and current financial problems
due to a debt to drug dealers.  (Tr. 245).  The staff did not report that the plaintiff
suffered from a functional impairment at this time.  (Tr. 247).

    Barrett was terminated from her position at Kentucky River Community Care
effective February 16, 2005.  (Tr. 143).  The plaintiff had testified positive for
barbiturates.  (Tr. 146).

    In July of 2005, Barrett was admitted to the chemical detox unit at the Baptist
Regional Medical Center.  (Tr. 172).  She was noted to be suffering from
polysubstance dependence including benzodiazepine, opiates, methamphetamine
and marijuana, a depressive disorder and a possible substance induced mood
disorder.  (Id.).  Her Global Assessment of Functioning (GAF) on admission was
rated at 30.  (Id.).  Such a GAF suggests "serious impairment in ability to
communicate or make judgments" according to the American Psychiatric
Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text
Revision), p. 34.  The claimant's condition stabilized and she was discharged with

a GAF rating of 55 to 60, indicating "moderate" symptoms.  (Id.).  Such "moderate" restrictions would be compatible with the ALJ's findings.

In August of 2005. treatment records from Cumberland River reported a diagnosis of bipolar disorder, depression, opioid dependence, and alcohol abuse. (Tr. 214).  The staff rated her GAF at 55, indicating the existence of "moderate" mental symptoms.  (Id.).

Dr. David Atcher examined Barrett in September of 2005.  Dr. Atcher diagnosed a major depression.  (Tr. 254).  The plaintiff's GAF was rated at 55, suggesting "moderate" psychological symptoms.  (Tr. 255).  The doctor opined that the claimant would have difficulty handling simple instructions and would be overwhelmed by complex tasks.  (Id.).  She would not do well with supervisors, co-workers or work pressures.  (Id.).  Dr. Atcher noted that her depression problems were complicated by substance abuse.  (Id.).

Two medical reviewers saw the record.  Psychologist Jane Brake reviewed it in October of 2005 and noted that Barrett would be "moderately" limited in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended time periods, work in coordination with others without being distracted by them, interact appropriately with the general public and respond appropriately to changes in the work setting.  (Tr. 257-258). Psychologist Jan Jacobson noted the same restrictions following his review of the

record in January of 2006.  (Tr. 283-284).  These restrictions were presented by the ALJ to the vocational expert.

Barrett was treated at the Family Practice Clinic on several occasions between March, 2003 and June, 2006.  (Tr. 322-381).  Kim McIntosh, a nurse-practitioner, noted depression and anxiety.[1]  (Tr. 345).  McIntosh indicated that the plaintiff would not be able to perform even low stress jobs.  (Tr. 346).

Dr. Vassili Arkadiev, a treating source at Cumberland River, noted a diagnosis of bipolar disorder, opioid dependence and alcohol abuse in November of 2005.  (Tr. 276).  Dr. Arkadiev rated Barrett's ability in most areas of mental functioning at either "fair" or "poor or none."  (Tr. 279-280).  The plaintiff would have "marked" restriction of activities of daily living and maintaining social functioning and "constant" difficulties of concentration and persistence and episodes of deterioration or decompensation in work or work-like settings.  (Tr. 281).  In June of 2007, the doctor again reported a diagnosis of bipolar disorder, opioid dependency, alcohol abuse and a personality disorder.  (Tr. 479).

Barrett was treated by Dr. Cesar Agtarap primarily for physical complaints during the spring of 2006.  (Tr. 312-321).  Dr. Agtarap noted opioid dependence on

---

[1]The name on the assessment was illegible.  (Tr. 349).  However, both parties agree that McIntosh completed the form.

several occasions.  (Tr. 312, 315, 321).  The doctor did not identify specific mental limitations.

The ALJ properly concluded that Barrett would not be disabled if she maintained sobriety.  As previously noted, the hypothetical question included all of the mental restrictions noted by the medical reviewers.  GAF scores obtained at Baptist Regional and Cumberland River were in the moderate range, compatible with the ALJ's findings, when she was abstaining from substance abuse.  Dr. Arkadiev did report the existence of very severe mental restrictions but these were related in part to opioid dependence, and, so, this opinion was properly rejected by the ALJ since substance abuse would be a contributing material factor to disability. (Tr. 23).  Dr. Atcher also reported more severe mental limitations but these were also related to substance abuse.  Finally, McIntosh was not an "acceptable medical source" and, so, her opinion was not binding on the administration.[2]  20 C.F.R. § 404.1513.  Therefore, the ALJ dealt properly with the evidence of record relating to the claimant's mental condition.

The ALJ also dealt properly with the evidence of record relating to Barrett's physical condition.  Dr. Rita Ratliff examined the plaintiff and reported that despite

---

[2]The claimant asserts that McIntosh was a medical doctor while the defendant indicates that she was not.  A search of the Kentucky Board of Medical Licensure website failed to find Kim McIntosh.  Kentucky Board of Medical Licensure, kbml.ky.gov/board/phys.htm, viewed May 2, 2011.  Therefore, the court must agree with the defendant.

complaints of back pain, there was no sign of motor or neurological deficits.  (Tr. 425).  The claimant's hypertension was noted to be well controlled.  (Id.).  While shortness of breath was noted, she had only mild pulmonary symptoms.  (Id.).  Barrett had continued to smoke cigarettes despite her breathing complaints.  (Tr. 423).  In Mullins v. Secretary of Health and Human Services, 836 F.2d 980 (6th Cir. 1987), the court found that in view of a claimant's continued smoking habit, "it was difficult to invision [sic] a severe and environmental restriction imposed by a pulmonary condition."  Id. at 985.  Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  Dr. Ratliff found no restrictions with regard to lifting, carrying, handling objects, and traveling.  (Tr. 425).  The only physical limitations indicated were a need to avoid temperature extremes, humidity, wetness and fumes, odors and chemicals.  (Tr. 432).  The hypothetical question was consistent with this opinion.

Dr. Agtarap did not identify specific physical restrictions other than a need to exercise and lose weight.  (Tr. 316).  Thus, this opinion also does not suggest disabling restrictions.

Barrett was also treated at the Booneville Medical Clinic.  These records also do not identify more severe physical restrictions than those found by the ALJ.  (Tr. 392-406, 433-478).

11

The court notes that McIntosh also identified a number of physical limitations. (Tr. 345-349).  These would also not be binding since McIntosh was not an "acceptable medical source."

Barrett asserts that the ALJ erred by failing to consider the combination of her mental and physical restrictions.  The plaintiff offers no specific argument as to why the ALJ erred on this point.  The court has already found that the hypothetical question fairly characterized her condition if she maintained sobriety and, so, the ALJ implicitly considered all of her impairments in combination.  Therefore, the undersigned finds no error.

Barrett also argues that her medical problems would prevent her from maintaining employment and, so, she could not meet the duration requirement for substantial gainful activity.  The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Cir. 1999) in support of her argument.  However, in Gatliff, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact.  Gatliff, 172 F.3d at 692.  In the present action, Barrett has not identified similar evidence suggesting that she would not be able to maintain employment.  Therefore, the court must reject the plaintiff's argument.

Finally, Barrett asserts that the ALJ erred in evaluating her credibility. However, the ALJ cited a number of reasons for this finding, including her activities as a homemaker and mother of a young child, the lack of objective medical data supporting her complaints, and the relatively modest findings of the consultative examiners and medical reviewers.  (Tr. 26).  Therefore, the court finds no error.

The court notes that Barrett submitted a number of records to the Appeals Council which were never seen by the ALJ.  (Tr. 484-570).  This action raises an issue concerning a remand for the taking of new evidence before the Commissioner.  Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993).  A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding.  Sizemore v. Secretary of Health and Human Services, 865 F.2d 709, 710 (6th Cir. 1988).  In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence.  Sizemore, 865 F.2d at 711.  The party seeking the remand bears the burden of showing that a remand is proper under § 405.

Willis v. Secretary of Health and Human Services, 727 F.2d 551 (6th Cir. 1984).
In the present action, the plaintiff has not adduced any arguments as to why such
a remand would be required.

The undersigned concludes that the administrative decision should be
affirmed.  A separate judgment and order will be entered simultaneously consistent
with this opinion.

This the 11th day of May, 2011.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**